**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| PATRICK PLUMLEY,<br><br>          Plaintiff,<br><br>          v.<br><br>EXTRACTION OIL & GAS, INC.,<br>THOMAS B. TYREE, JR., BENJAMIN DELL,<br>MORRIS CLARK, CARRIE FOX,<br>CARNEY HAWKS, MICHAEL WICHTERICH,<br>and HOWARD A. WILLARD, III,<br><br>          Defendants. | )<br>)<br>)  Case No. _____<br>)<br>)<br>)<br>)  **COMPLAINT FOR VIOLATIONS OF**<br>)  **THE FEDERAL SECURITIES LAWS**<br>)<br>)<br>)  **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>) |

Plaintiff Patrick Plumley ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Extraction Oil & Gas, Inc. ("Extraction" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the action, Plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which Bonanza Creek Energy, Inc, ("Bonanza") will merge with the Company through Extraction's subsidiary Raptor Eagle Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").[1]

---

[1] Non-party Bonanza is a Delaware corporation with principal executive offices located at 410 17th Street, Suite 1400, Denver, CO 80202. Bonanza's shares trade on the New York Stock Exchange under the ticker symbol "BCEI." Non-party Merger Sub is a Delaware corporation and

2. On May 10, 2021, Bonanza and Extraction announced their entry into an Agreement and Plan of Merger dated the prior day (the "Merger Agreement"). That agreement provides Extraction stockholders will receive 1.1711 shares of Bonanza common stock for each Extraction share they own. (the "Merger Consideration").[2]

3. On September 28, 2021, Extraction filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Extraction stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

---

a wholly owned subsidiary of Extraction.

[2] The approximate value of the Proposed Transaction is $6.4 billion.

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and is and has been at all times relevant hereto, a continuous stockholder of Extraction.

10. Defendant Extraction is a Delaware corporation with its principal executive offices located at 370 17th Street, Suite 5200, Denver, Colorado 80202. Extraction is an independent energy company differentiated by its financial, operational and governance model. The Company's common stock is traded on The Nasdaq Global Select Market under the ticker symbol "XOG."

11. Defendant Thomas B. Tyree, Jr. ("Tyree") has been Chief Executive Officer ("CEO") of the Company since January 2021, and has been a director since February 2020. Defendant Tyree previously served as Executive Chairman of the Board from February 2020 to January 2021.

12. Defendant Benjamin Dell ("Dell") is Chairman of the Board (defined below) and has been a director of the Company since January 20, 2021.

13. Defendant Morris Clark ("Clark") has been a director of the Company since

January 20, 2021.

14. Defendant Carrie Fox ("Fox") has been a director of the Company since January 20, 2021.

15. Defendant Carney Hawks ("Hawks") has been a director of the Company since January 20, 2021.

16. Defendant Michael Wichterich ("Wichterich") has been a director of the Company since January 20, 2021.

17. Defendant Howard A. Willard, III ("Willard") has been a director of the Company since January 20, 2021.

18. Defendants identified in paragraphs 11-17 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

19. On May 10, 2021, Extraction and Bonanza jointly announced in relevant part:

DENVER, May 10, 2021 (GLOBE NEWSWIRE) -- Bonanza Creek Energy, Inc. (NYSE: BCEI) ("Bonanza Creek") and Extraction Oil & Gas, Inc. (NASDAQ: XOG) ("Extraction"), today announced that they have entered into a definitive agreement to combine in an all-stock merger of equals. The combined company, to be named Civitas Resources, Inc. ("Civitas"), will be the largest pure-play energy producer in Colorado's Denver-Julesburg (DJ) Basin, with an aggregate enterprise value of approximately $2.6 billion (based on the closing share prices of Bonanza Creek and Extraction on May 7, 2021).

**TRANSACTION HIGHLIGHTS**

- The merger will create a leading energy producer in Colorado's DJ Basin, a basin characterized by low operating costs, extensive infrastructure, ample takeaway, multiple producing horizons and responsible energy production.
- The combined company will operate across approximately 425,000 net acres, with a production base of 117 thousand barrels of oil equivalent per day (117 Mboe/d, on a pro forma 1Q21 production basis).

- The transaction is expected to be significantly accretive to free cash flow and other per-share metrics.
- At closing, Civitas is projected to be one of most well-capitalized companies in the industry, with a leverage ratio below 0.3x pro forma 1Q21 Net Debt / 2021E EBITDA.
- Civitas expects to achieve annual expense and capital savings of approximately $25 million.
- Bonanza Creek's recently announced annual dividend of $1.40 per share is expected to be increased by Civitas to $1.60 per share effective at closing, with such increase representing a distribution of approximately half of the transaction synergies to Civitas' shareholder base.
- Bonanza Creek President and Chief Executive Officer, Eric Greager, will serve as President and CEO of Civitas. Other senior leadership positions will be filled by current executives of Bonanza Creek and Extraction.
- Extraction Chairman of the Board, Ben Dell, will serve as Chairman of Civitas, and each of Bonanza Creek and Extraction will nominate four directors to Civitas' diverse, eight-member Board.
- Civitas will take to the next level an E&P business model that has been actively embraced by both Bonanza Creek and Extraction, defined by operational discipline, a strong balance sheet, commitment to free cash flow generation, financial alignment with stakeholders, environmental and community leadership, and best-in-class governance.
- At closing, Civitas will be Colorado's first net-zero oil and gas producer (scope 1 and scope 2) through an intensive, continuing focus on reducing operational emissions and a multi-year investment in certified emissions offsets.

**CEO COMMENTARY**

"Successful E&P operators will be those who place a priority on disciplined capital deployment, deliver operational and cost excellence, maintain a relentless focus on shareholder value, and have governance standards that are aligned with the times," said Eric Greager, President and Chief Executive Officer of Bonanza Creek. "Bonanza Creek and Extraction each bring a demonstrated commitment to these principles, as well as shared organizational and community values. Together, as Civitas, we will embody an E&P business model ideally suited to deliver for all of our stakeholders."

"We believe the combination of Bonanza Creek and Extraction will create one of the most durable, profitable, and progressive producers in the DJ Basin, with premium assets at the front end of the cost curve," said Tom Tyree, Chief Executive Officer of Extraction. "Collectively, we will create significant value for all stakeholders as we will become Colorado's first net-zero oil and gas producer through the continuing reduction in operational emissions coupled with a multi-year investment in certified emissions offsets."

**TRANSACTION DETAILS**

Under the terms of the definitive merger agreement, Extraction shareholders will receive a fixed exchange ratio of 1.1711 shares of Bonanza Creek common shares for each share of Extraction common stock owned on the closing date. Based on the exchange ratio and the closing price of Bonanza Creek's common stock on May 7, 2021, Civitas would have an aggregate enterprise value of approximately $2.6 billion. Upon completion of the transaction, Bonanza Creek and Extraction shareholders will each own approximately 50.0% of Civitas, both on a fully diluted basis.

The transaction, which is expected to close in the third quarter of 2021, has been unanimously approved by the boards of directors of both companies. Funds managed by Kimmeridge Energy own approximately 38% percent of the outstanding shares of Extraction and have entered into a support agreement to vote in favor of the transaction. The closing of the merger is subject to customary closing conditions, including approvals by Bonanza Creek and Extraction shareholders.

**STRATEGIC RATIONALE**

- **Enhanced scale and geographic breadth** – Civitas will be the largest pure-play energy producer in the DJ Basin with current production of 117 thousand barrels of oil equivalent per day (117 Mboe/d) and approximately 425,000 net acres. These operations are geographically diversified across rural, less regulatory-intensive areas, as well as more prospective suburban acreage.

- **Significant corporate synergies further reduce basin-leading cost structures** – The combined company expects to generate approximately $25 million in annual corporate synergies, including general and administrative savings, LOE efficiencies, and reduced capital costs. The merger of equals structure allows shareholders of both Bonanza Creek and Extraction to benefit from the cost synergies and significant upside potential of the combined company.

- **Acceleration of cash returns to shareholders** – Civitas represents the next level of an E&P business model that has been actively embraced by both Bonanza Creek and Extraction, and is defined by capital discipline, low cost structure, and a strong balance sheet to maximize free cash flow and accelerate the distribution of a material portion of this cash to shareholders. Disciplined reinvestment rates are expected to yield flat to low production growth in the coming years and generate sufficient free cash flow to support material dividends going forward. Bonanza Creek's recently announced annual dividend of $1.40 per share is expected to be increased by Civitas to $1.60 per share effective at closing, with such increase representing a

    distribution of approximately half of the transaction synergies to Civitas' shareholder base.

- **Strong balance sheet and liquidity** – The all-stock transaction ensures Civitas will retain a strong balance sheet, with a leverage ratio below 0.3x pro forma 1Q21 Net Debt / 2021E EBITDA, at the time of closing, and Civitas will target leverage of approximately 0.5x over the longer term. Civitas will also have significant liquidity. As of April 1, 2021, Bonanza Creek and Extraction had combined cash on hand of $127 million and combined undrawn capacity under their credit facilities of $651 million. The resulting enhanced credit profile is expected to broaden the combined company's access to the capital markets and reduce its overall cost of capital.

- **Advances consolidation strategy** – Civitas represents a major step in Bonanza Creek's and Extraction's consolidation strategies, which have been pursued in conjunction with the companies' continuing initiatives to reduce unit costs, expand margins, enhance returns, increase financial strength, and grow cash distributions to shareholders. Civitas will be positioned to be the preferred consolidation partner for additional transactions in the DJ Basin, helping to increase its trading liquidity and market relevance, and ultimately to elevate its presence among the top energy producers in the country.

- **Industry-leading commitment to ESG excellence and values** – Civitas will expand on the ESG initiatives pursued by both Bonanza Creek and Extraction, including its commitment to become Colorado's first net-zero oil and gas producer at closing, through continuing reduction in operational emissions coupled with a multi-year investment in certified emissions offsets. Civitas will pursue additional sustainability objectives including the adoption of an electric vehicle (EV) fleet; installation of EV charging stations in its communities; air monitoring and certification through leading organizations such as Project Canary and pursuit of the Responsibly Sourced Gas certification for its natural gas production; the development of community solar facilities; and the financing of a community fund to sponsor local project grants and scholarships. Upon close, Civitas will provide a progressive framework for achieving its ESG targets, which it believes will address the interests of its operating partners, employees, service providers, and the communities in which the combined company operates.

**GOVERNANCE AND LEADERSHIP**

Following the merger, the Civitas board of directors will consist of eight members, four directors from Bonanza Creek and four from Extraction. Extraction's current Chairman, Ben Dell, will be Chairman of the Board, and Bonanza Creek's current

President and Chief Executive Officer will be President and CEO of Civitas. The combined company's executive team will include demonstrated leaders from each of Bonanza Creek and Extraction, including: Matt Owens as EVP and COO, Marianella Foschi as EVP and CFO, Skip Marter as EVP and General Counsel, Sandi Garbiso as SVP and CAO, and Brian Cain as VP of External Affairs and ESG Policy. Civitas will be headquartered in Denver.

**ADVISORS**

J.P. Morgan Securities LLC is serving as financial advisor and Vinson & Elkins LLP is serving as legal advisor to Bonanza Creek. Petrie Partners Securities, LLC is serving as financial advisor and Kirkland & Ellis LLP is serving as legal advisor to Extraction.

**The Proxy Statement Contains Material Misstatements or Omissions**

20. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Extraction' stockholders. The Proxy Statement misrepresents or omits material information necessary for the Company's stockholders to make an informed voting or appraisal decision on the Proposed Transaction.

21. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (a) the Company's financial projections; and (b) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Petrie Partners Securities, LLC ("Petrie Partners"); and (c) the background of the Proposed Transaction.

*Material Omissions Concerning the Company's Financial Projections*

22. The Proxy Statement omits material information regarding the Company's financial projections, including the line items underlying the Company's forecasts for (a) adjusted EBITDA and (b) unlevered free cash flow. *See* Proxy Statement at 114-115.

23. The omission of this information renders the statements in the "Certain Unaudited

Prospective Financial and Operating Information " and "Opinion of Extraction's Financial Advisor" section of the Proxy Statement false and/or materially misleading in violation of the Exchange Act.

*Material Omissions Concerning the Financial Analyses Relied on by the Board*

24. The Proxy Statement omits material information regarding the data and inputs underlying the valuation analyses performed by Petrie Partners.

25. The Proxy Statement describes the Petrie Partners' fairness opinions and the various underlying valuation analyses. That description, however, omits key inputs and assumptions forming the bases of these analyses. The absence of this material information precludes the Company's public stockholders from fully understanding the Petrie Partners' work. As a result, Extraction stockholders cannot assess what significance to place on the Petrie Partners' fairness opinion in determining whether to approve the Proposed Transaction or otherwise act.

26. With respect to Petrie Partners' *Discounted Cash Flow Analysis,* the Proxy fails to disclose: (a) the inputs and assumptions underlying the discount rates utilized in connection with the analysis; (b) the long-term debt and estimated net working capital as of March 31, 2021; and (c) the estimated synergies expected to be realized as a result of the consummation of the Proposed Transaction

27. With respect to Petrie Partners' *Property Transaction Analysis*, the Proxy fails to disclose the individual multiples and financial metrics for each of the precedent transactions observed in the analysis.

28. With respect to Petrie Partners' *Capital Market Comparison Analysis,* the Proxy fails to disclose the individual multiples and financial metrics for each of the comparable companies observed in the analysis.

29. With respect to Petrie Partners' *Corporate Transaction Analysis*, the Proxy fails to disclose the individual multiples and financial metrics for each of the comparable companies observed in the analysis.

30. With respect to Petrie Partners' *Going Concern Analysis*, the Proxy fails to disclose: (a) the individual inputs and assumptions underlying Petrie Partners' use of the multiples employed in the analysis; and (b) the individual inputs and assumptions underlying Petrie Partners' use of the discount rates in the analysis.

31. The omission of this information renders the statements in the "Opinion of Extraction's Financial Advisor" section of the Proxy Statement false and/or materially misleading in violation of the Exchange Act.

*Material Omissions Concerning the Background of the Proposed Transaction*

32. The Proxy Statement omits material information regarding the background process leading to the Proposed Transaction.

33. For example, the Proxy Statement fails to disclose whether the Company entered into any confidentiality agreements with any interested bidders during the background process that include "don't-ask, don't-waive" ("DADW") standstill provisions that are still in effect and presently precluding any interested parties from submitting a topping bid for the Company.

34. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a non-disclosure agreement could make a superior proposal for the Company. If the potential acquirer's non-disclosure agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (a) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask

for a waiver, either directly or indirectly; or by (b) being released from the agreement, which if the action has been done, is omitted from the Proxy Statement.

35. Any reasonable Extraction stockholder would deem the fact that a potential topping bidder for the Company, may be precluded from making a topping bid for the Company, to significantly alter the total mix of information.

36. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

37. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Extraction stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

38. Plaintiff repeats all previous allegations as if set forth in full.

39. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

40. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Petrie Partners. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

41. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

42. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

43. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

44. Plaintiff repeats all previous allegations as if set forth in full.

45. The Individual Defendants acted as controlling persons of Extraction within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Extraction, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

48. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the

Exchange Act.  As a direct and proximate result of defendants' conduct, Extraction' stockholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Extraction, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Extraction stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK.]

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  October 12, 2021               **LONG LAW, LLC**

                                       By  */s/ Brian D. Long*
                                           Brian D. Long (#4347)
                                           3828 Kennett Pike, Suite 208
                                           Wilmington, DE 19807
                                           Telephone: (302) 729-9100
                                           Email: BDLong@longlawde.com

                                           *Attorneys for Plaintiff*